## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

SANDY L. GREEN                                        CIVIL ACTION NO. 22-1422

VERSUS                                               JUDGE S. MAURICE HICKS, JR.

OCHSNER LSU HEALTH                                   MAGISTRATE JUDGE HORNSBY
SHREVEPORT

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 36) filed by the Defendant, Ochsner LSU Health Shreveport ("Ochsner"). Plaintiff, Sandy L. Green ("Green"), has sued Ochsner for alleged discrimination against her under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). Green opposed the motion. See Record Document 47. Ochsner replied. See Record Document 48.  After careful consideration of the parties' submissions, and the law applicable before the Court, Ochsner's Motion for Summary Judgment is **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

The present suit arises out of an employment relationship between Green and Ochsner that ended on February 26, 2021. At the beginning of her employment on March 2, 2020, Green was a referral coordinator as a temporary employee through her previous employer Jean Simpson ("Simpson"). See Record Document 36-3 (Green Deposition) at 4-5.. By the end of her time as a temporary employee, she reported to Richard Dasilva ("Dasilva"), the manager in charge of Ochsner's Referral Coordinators and temporary employees assigned to the Referral Coordinator team. See id. at 6. Dasilva reported to William Thacker ("Thacker") the Assistant Vice President ("AVP") of the Revenue Cycle

for Ochsner in Shreveport. See id. at 16-17; Ex. 4 11:8-15. Green then applied for full-time employment with Ochsner, interviewed with Dasilva, and was hired. See id. at 9.

Once Green was working full-time, she was in-person at an Ochsner office that was offsite from the Ochsner hospital and did not interact with patients in person. See id. at 5. Referral Center Coordinators are primarily responsible for working with medical providers to process electronic referrals from patients from outside of Ochsner's network to Ochsner's physicians. See id. at 11-12. Due to the COVID-19 pandemic, Referral Center Coordinators were allowed to work from home. See Record Document 36-3 at 21. At that time, the entire department in which Green worked consisted of African Americans. See Record Document 43-5 (Murray Deposition) at 20. Green claims that she witnessed other departments receive permission to work from home throughout the month of March 2020, leaving her team, consisting of five African American coordinators, the only team left in the building. See Record Document 36-3 at 25. She specifically claims that the nursing department in her office building was permitted to work from home earlier than her department, even though those employees also did not interact with patients in person. See id. at 22.

Georgetta Murray ("Murray"), who supervised a different department at the time, testified that the ability to work from home was determined on an employee-by-employee basis. See Record Document 43-5 at 14-15. Green also had a conversation with Thacker, and she claims that the comments made during that conversation were based on her race, allegedly implying that her team was "lazy" when he said "I hope you-all don't think this is a vacation." Record Document 36-3 at 23. Green reported this conversation with Thacker to the Ochsner Ethics Compliance Hotline. See id. at 27; see also Record

2

Document 47-7 (Ochsner Compliance Hotline Report) at 1. She complained that Thacker was allegedly "unprofessional and disrespectful" and that there was a "lack of communication." Id. Notably, Green did reference her race or age in this complaint. See id. Mike Gilpin ("Gilpin") was assigned to investigate the complaint and closed it when he was unable to reach Green. See Record Document 36-7 (Gilpin Deposition) at 6. On March 24, 2020, Green made another complaint against Dasilva regarding classifications of employees who would be allowed to work from home, and the fact that these would be "based on if you are a parent or your health reasons to be going home." Record Document 47-7 at 1. Green testified that she was permitted to work from home at the end of March 2020. See Record Document 36-3 at 21.

On or around May 14, 2020, Green made another complaint to Ochsner's Employee Relations team that her Interim Supervisor Brandina Allen ("Allen") did not adequately respond to alleged bullying by a coworker telling Green in a Microsoft Teams chat "[i]f you want something done correctly, you can always do it yourself." Id. at 28-30. Green testified that she did not claim that this was because of her age or race. See id. at 30. The complaint was assigned to Gilpin, who reached out using the email address available to him and did not receive a response. See Record Document 36-7 at 11; see also Record Document 36-3 at 89. Gilpin testified that it is the employee's responsibility to update his or her email address in the system if it changes. See id.

In July 2020, William "Ryan" Smith ("Smith") replaced Thacker as the AVP. See Record Document 36-3 at 32. Green made another complaint about Dasilva to Employee Relations stating that Dasilva retaliated against her because of her first complaint during a workplace meeting where he was purportedly yelling at her. See id. at 33-34. She also

asserts that he admonished her regarding her productivity, and as a result the clinics Green worked for were reduced from four to two, and she testified that the person who received her clinics was much younger than her. <u>See</u> Record Documents 47-13 and 47-15; <u>see also</u> Record Document 36-3 at 69-70. At the time, Green was the oldest patient referral coordinator. <u>See</u> Record Document 36-3 at 73. Green testified that this interaction was discrimination based on her age because Dasilva stated that she was "not able to keep up with the process" and her "productivity was below others." <u>Id.</u> at 35, 73-74. On July 20, 2020, Green met with Allen, Dasilva, and Employee Relations Consultant Kathleen Dupaty ("Dupaty"). <u>See id.</u> at 37. During the meeting, Dupaty provided guidance on how Green and Dasilva could work through issues in the future, and Green agreed to try to do her best to communicate with Dasilva moving forward. <u>See id.</u> at 37-38.

Following the meeting, Green exchanged emails with Dupaty stating that she appreciated what she had "done to resolve this matter" and "for providing communication tools", while also stating that she addressed Green's concerns "with the best possible ability." <u>Id.</u> at 40-41. On August 28, 2020, Green complained to Gilpin regarding Allen asking about her overtime hours. <u>See id.</u> at 44. Green testified that she was asked to seek approval for overtime hours before they were worked, believing that this was "a part of the harassment in the office." Record Document 36-3 at 45-46. Gilpin again investigated this complaint, and he informed Green that all employees had to be specific about when they anticipated working overtime hours after he determined that there was no evidence overtime was used inappropriately or taken inappropriately from Green. <u>See</u> Record Document 36-7 at 10. Green states that she made a complaint regarding Allen's

refusal to approve her overtime requests and that she approved others' requests ahead of hers. See Record Document 47-2 (Green Deposition) at 111.

Murray was promoted to Manager in charge of the Referral Center Coordinators after Dasilva transitioned to a consultant role on August 30, 2020. See Record Document 36-3 at 43-44. Kristin Thomas-White ("Thomas-White") became the direct supervisor of the referral center coordinators, reporting to Murray. See id. at 54. Green made no complaints about Thomas-White. See id. On October 9, 2020, Green made another complaint that Murray sent an email requiring Referral Center Coordinators to take lunch breaks at specific times, and she claims that this was substantial change from her previous conditions of employment. See id. at 48.

Green asserts that Dasilva continued to "harass and discriminate against" her after his transition to a consultant role because he sent emails, repeatedly called her for no reason, and participated in her annual review. See id. at 59-60. Green testified that Dasilva called her "a couple of times" but never left a voicemail or followed up by email before Green's resignation, and that they did not speak after he moved to the consultant position in August. Id. at 52-53, 60.

Green sent an email to Smith thanking him for all that he had done within the department to bring change and had great things to say about him on February 13, 2021. See Record Document 36-3 at 58. She claims, however, that the damage was already done and that she "could no longer handle the harassment [at her] job," because she "was at [her] breaking point." Id. at 59. On February 26, 2021, Green resigned from her job after taking a call from a recruiter that helped her find a new role. See id. at 58, 61.

Green filed the instant suit on May 25, 2022. <u>See</u> Record Document 1. In her Amended Complaint (Record Document 8), Green asserts claims of racial and age discrimination, retaliation, and a hostile work environment under Title VII and the ADEA. Ochsner's Motion for Summary Judgment followed and is now before this court.

## SUMMARY JUDGMENT STANDARD

Rule 56(a) provides, in pertinent part:

> Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); <u>see also</u> <u>Quality Infusion Care, Inc. v. Health Care Serv. Corp.</u>, 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Quality Infusion Care, Inc.</u>, 628 F.3d at 728. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Patrick v. Ridge</u>, 394 F.3d 311, 315 (5th Cir. 2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." <u>Gen. Universal Sys., Inc. v. Lee</u>, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not

support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

**ANALYSIS**

Ochsner moves for summary judgment on each of Green's claims. The Court will analyze each claim separately.

A. **Title VII Racially Hostile Work Environment Claim**

Ochsner argues that Green cannot establish a *prima facie* case for a race-based hostile work environment claim because the only allegation with respect to race-based harassment is that Thacker allegedly told her that working from home would "not be a vacation" and that she still had to meet her productivity goals. See Record Document 38 at 17-18. Green asserts that her all African American department was denied the ability to work from home during the COVID-19 pandemic, while other departments were granted this privilege, and that this directly indicates that a privilege of employment was adversely affected based on race. See Record Document 47 at 32. She also maintains that the disparate treatment was exacerbated by Thacker's alleged racially charged comments, which she claims insinuated that she and her colleagues were "lazy," a stereotype with racial undertones. Id.

Hostile work environment claims rely, for the most part, on direct evidence. See E.E.O.C. v. Bass Pro Outdoor World, Inc., 35 F.Supp.3d 836, 857 (S.D. Tex. 2014). Title VII "makes it unlawful for employers to require people to work in a discriminatorily hostile or abusive environment." West v. City of Hous., Tex., 960 F.3d 736, 741 (5th Cir. 2020). A hostile work environment claim "necessarily rests on an allegation that an employer has created a working environment heavily charged with discrimination." Raj v. La. State

<u>Univ.</u>, 714 F.3d 322, 330 (5th Cir. 2013). A hostile work environment claim requires: (1) membership in a protected group; (2) harassment; (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly. <u>See</u> <u>Hernandez v. Yellow Transp. Inc.</u>, 670 F.3d 644, 654 (5th Cir. 2012).

To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Id.</u> (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998)). To determine whether a work environment is objectively offensive, courts must consider "the totality of the circumstances," including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." <u>EEOC v. WC&M Enters., Inc.</u>, 496 F.3d 393, 399 (5th Cir. 2007). No single factor is determinative. <u>See</u> <u>Bye v. MGM Resorts Int'l, Inc.</u>, 49 F.4th 918, 924 (5th Cir. 2022).

Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, <u>DeAngelis v. El Paso Mun. Police Officers Ass'n</u>, 51 F.3d 591, 593 (5th Cir.1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. <u>Hockman v. Westward Communications, LLC</u>, 407 F.3d 317, 328 (5th Cir. 2004). Green's own subjective beliefs, however genuine, cannot form the basis of judicial relief. <u>Nichols v. Lewis Grocer</u>, 138

F.3d 563 (5th Cir.1998); <u>Little v. Republic Refining Co.</u>, 924 F.2d 93, 95 (5th Cir.1991). Moreover, "[i]solated incidents do not support a hostile work environment claim unless the complained-of incident is 'extremely serious' in nature." <u>Higgins v. Lufkin Indus., Inc.</u>, 633 Fed. App'x. 229, 235 (5th Cir. 2015). In short, Title VII is not a general civility code for the American workplace. <u>West v. City of Houston, Tex.</u>, 960 F.3d 736, 743 (5th Cir. 2020).

In the current case, the only evidence presented to support a racially hostile work environment are the comments allegedly made by Thacker and the claim that Green's team of all African American employees were not allowed to work from home. Green testified that Thacker told her "I hope you-all don't think this is a vacation for you-all, and you-all will still have to work hard." Record Document 36-3 at 24. Green admits that Thacker never mentioned her race, and although she states that she believed his comments were racially motivated "because [ ] he was talking to [her]. [Her] team of five coordinators was the only team left. [Her] team was African American females as [her]self. No one else was asked that question," she also testified that she and her colleagues were "not in the office very long" following the beginning of the pandemic, being sent home in "late March." Record Document 36-3 at 20, 25. Further, in her complaint to Ochsner's Ethics Compliance Committee, she complained that Thacker was "unprofessional and disrespectful" and that there was a "lack of communication," but did not mention race. Record Document 36-4 at 1. Under the fourth prong, this incident would not be objectively or subjectively severe or pervasive enough to alter the terms or conditions of Green's employment, despite her subjective beliefs that it was based on race.

9

Compare <u>Price v. Valvoline, L.L.C.</u>, 88 F4th 1062, 1067 (5th Cir. 2023) (finding that two incidents where a black plaintiff was called a "lazy boy" and was told that "you people always want something for free," although historically used in demeaning ways towards black men, were insufficiently severe to establish a hostile work environment), <u>Hernandez</u>, 670 F.3d at 52 (holding that a plaintiff being called a racially derogatory term and seeing a poster or letter that was derogatory about Hispanics was not sufficient to support a hostile work environment claim), <u>WC&M Enters., Inc.</u>, 496 F.3d at 400–01 (holding there was sufficiently pervasive and severe harassment based on national origin where employee was regularly subjected over a one-year period to being called "Arab," "Taliban," being told to go back he came from, and he received a written warning that said he was acting like a "Muslim extremist"), <u>Mosley v. Marion Cty.</u>, 111 Fed.Appx. 726, 728 (5th Cir. 2004) (unpub.) (holding that evidence of three incidents involving racial slurs was insufficient to support a hostile work environment claim), <u>Walker v. Thompson</u>, 214 F.3d 615, 626–27 (5th Cir. 2000), abrogated on other grounds by <u>Burlington N. & Santa Fe Ry. Co v. White</u>, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (holding that African-American employees who were subjected to a variety of racial slurs over three-year period raised fact issue as to whether slurs were sufficiently severe or pervasive to violate Title VII).

Green presented no evidence beyond her own speculation that Thacker's comments and the short period her team was not allowed to work from home were racially motivated. Fifth Circuit caselaw is clear that "subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment." <u>Cavalier v. Clearlake Rehab. Hosp., Inc.</u>, 306 F. App'x 104, 106–07 (5th Cir. 2009) (declining to consider allegations

that supervisor "bragged to others that she would get [the plaintiff] fired, and repeatedly called him a 'doofus' and a 'dunce'" as evidence of race-based harassment supporting a hostile work environment claim). Accordingly, Green has not produced evidence sufficient to support a *prima facie* case of a racially hostile work environment.

The Court notes that Green argues that Ochsner's response to her complaints was neither prompt, appropriate, nor reasonably calculated to cease the harassment and discrimination, and this failure to act effectively on known complaints creates a strong basis for her claims under Title VII. See Record Document 47 at 27. However, because Green cannot establish the elements discussed above, she still cannot state a *prima facie* case.

B. **ADEA Hostile Work Environment Claim**

Ochsner argues that Green has put forth no evidence to establish the second or third elements of an age-based hostile work environment claim. See Record Document 38 at 20. Ochsner states that Green's only allegation of mistreatment based on age stems from a conversation with Dasilva that is insufficient to create a fact issue as to whether Green experienced an age-based hostile work environment. See id. Green argues that the evidence, viewed in its entirety, establishes that she was subjected to a hostile work environment due to her age. See Record Document 47 at 35.

To establish a hostile work environment claim under the ADEA, a plaintiff must show that:

> (1) [s]he was over the age of 40; (2) [s]he was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

11

Eng. v. Perdue, 777 F. App'x 94, 98 (5th Cir. 2019) (citing Dediol v. Best Chevrolet, Inc., 655 F.3d 435, 441 (5th Cir. 2011)). Failure to prove any of these essential elements is fatal to her claim. Anderson v. YRC, Inc., 742 F. App'x 27 (5th Cir. 2018). As stated in the above analysis, "[h]arassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Hernandez, 670 F.3d at 651. Similarly, in order to prove a hostile work environment claim under the ADEA, a plaintiff must establish that "the employee was subjected to harassment, either through words or actions, based on age" and that "the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment." Dediol v. Best Chevrolet, Inc., 655 F.3d 435, 441 (5th Cir. 2011).

Here, it is undisputed that Green was over the age of 40 at the time of the alleged incidents. In support of her age-based hostile work environment claim, Green cites to only two purportedly discriminatory comments made by Dasilva. She testified that Dasilva's comments that she was "not able to keep up with the process" and her "productivity was below others" were discrimination based on her age. Record Document 36-3 at 35, 73-74. She also asserts that Ochsner reducing her duties constituted age-based harassment. See Record Document 36-3 at 69-70; see also Record Documents 47-13 and 47-15.

In Gonzales v. Wells Fargo Bank, National Association, the Fifth Circuit considered a case in which a seventy-five-year-old plaintiff claimed that her supervisor scrutinized her work more closely than others', and that her supervisor stated that she reminded her of her "elderly, deceased mother." 733 Fed.Appx. 795, 798 (5th Cir. 2018). The court noted that the allegations regarding the scrutiny of her work amounted to nothing more

than "careful monitoring of job performance," which does not rise to the level of hostile work environment harassment. Id. (quoting Ellis v. Principi, 246 Fed.Appx. 867, 871 (5th Cir. 2007) and O'Brien v. Dep't of Agric., 532 F.3d 805, 810 (8th Cir. 2008) ("Although increased scrutiny might, at some point, amount to a hostile work environment, nothing in this record warrants such a finding." (collecting cases)). The court also found that the comment her supervisor made was an isolated, one-time remark that does not itself support a hostile work environment claim. See id. (citing Lauderdale v. Tex. Dep't of Criminal Justice, 512 F.3d 157, 163 (5th Cir. 2007). Here, the Court finds that, like the scrutiny of the plaintiff's job performance described above, Dasilva's purported comments scrutinizing Green's job performance as her manager do not arise to the level of hostile work environment harassment. Therefore, she fails to meet the third element of an age-based hostile work environment claim.

Further, the Fifth Circuit has affirmed summary judgment in cases involving isolated incidents that actually referred to age. See Gonzales, Reed v. Neopost USA, Inc., 701 F.3d 434, 443 (5th Cir. 2012) (denying ADEA hostile work environment claim where "coworkers called [the plaintiff] names like 'old man,' 'old fart,' 'pops,' and 'grandpa'"); Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 330 (5th Cir. 2009) ("These occasional statements did not create a hostile work environment because they were not severe, physically threatening, or humiliating; at most, they were unwanted and offensive."). The only evidence that Dasilva's alleged harassment of Green was based upon her age is her testimony based upon her own subjective beliefs, and unsubstantiated claims that two of the four clinics she operated were given to a "younger" employee named "Jimarsa." See Record Document 45-6 at 3; see also Record Document 36-3 at 66. This is insufficient to

13

satisfy Green's summary judgment burden. See Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted). (citing Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir.1996)). Summary judgment is appropriate on Green's age-based hostile work environment claim.

C. **Title VII Race Discrimination**

Ochsner argues that Green cannot make a *prima facie* case for race discrimination. See Record Document 38 at 24. The Court agrees and finds that Green cannot establish a *prima facie* case necessary to prove her racial discrimination claim. Therefore, such claim does not survive summary judgment.

Title VII of the Civil Rights Act of 1964 tolerates no racial discrimination, subtle or otherwise. *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). Because Green cannot provide direct evidence of race discrimination, the burden-shifting paradigm set forth in McDonnell Douglas governs her race discrimination claim. The plaintiff bears the initial burden to establish a *prima facie* case of discrimination by a preponderance of the evidence. See id. at 1824. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's actions. See id. "If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff." Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007). The plaintiff must then show either that the employer's proffered reason is merely a pretext for discrimination, or that the plaintiff's protected characteristic was at least a "motivating factor" for the employer's actions. See id.

To establish a *prima facie* claim for race discrimination under Title VII, a plaintiff must show that she: (1) is a member of a protected group; (2) was qualified for the position

at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees (i.e., "comparators")  outside the protected group. See Ernest v. Methodist Medical Hospital Sys., 1 F.4th 333, 339 (5th Cir. 2021) (citing Story v. Gibson ex rel. Dep't of Veteran Affs., 896 F.3d 693, 698 (5th Cir. 2018)).

It is undisputed that Green is a member of a protected class and that she was qualified for her position. See Record Document 38 at 25. However, Ochsner first contends that any temporal distance between when the Nursing Department was allowed to work from home and when Green's team were allowed to work from home is *de minimis* and insufficient to establish an adverse employment action. See id.

In its *en banc* Hamilton decision, the Fifth Circuit rejected its earlier "ultimate employment decision" test for an "adverse employment action" in favor of a less strict standard. Hamilton v. Dallas Cnty., 79 F.4th 494, 502 (5th Cir. 2023) (en banc). Now, "a Title VII plaintiff may recover damages even for 'discrimination in the terms, conditions, or privileges of employment' that 'did not involve a discharge,' 'loss of pay,' or other 'concrete effect on [his or her] employment status.'" Id. at 501. The Fifth Circuit subsequently applied Hamilton in another recent decision, Harrison v. Brookhaven School District, and held that to state a discrimination claim, a plaintiff "must allege not only an adverse action, but something more than a *de minimis* harm borne of that action." 82 F.4th 427, 431 (5th Cir. 2023) (citation omitted). The court noted that this is often referred to as the "materiality" half of the analysis. Id. In other words, the "*de minimis*" and "materiality" standards are one and the same. Dixon v. Garland, No. 23-19, 2024 WL

150509 at *4 (N.D. Tex. Jan. 12, 2024). Materiality is a shorthand characterization of the well-established *de minimis* standard, which "has roots that stretch to ancient soil." Harrison, 82 F.4th at 423. And thus, courts must give the *de minimis* standard its familiar meaning— "*de minimis* non curat lex (the law does not take account of trifles)." Id. Applying this standard, a plaintiff alleges an adverse employment action if she alleges more than *de minimis* discrimination in the terms, conditions, or privileges of employment. See id.

In Harrison, the plaintiff, a black female educator and school administrator, sued her school district for promising and then refusing to pay for her to attend a training program for prospective superintendents. See id. at 428. The only element of her claim at issue was whether she suffered an adverse employment action. See id. at 429. The court held that Harrison "allege[d] more than a *de minimis* injury inflicted on her by the School District's adverse action: the personal expenditure of approximately $2,000." Id. at 432. The court explained that this "is not a *de minimis* out-of-pocket injury, particularly when that expense was originally promised to be paid by someone else." Harrison, 82 F.4th at 432. Thus, the court concluded that "Harrison's injury clears the *de minimis* threshold." Id. An injury need not be an "economically adverse employment action" to satisfy the *de minimis* threshold. Id. at 430. But the *de minimis* standard prevents judges from supervising the "*minutiae* of personnel management." Id. at 431.

Having clarified the applicable standard, the Court must now ask if Green suffered more than a *de minimis* adverse employment action. In Sambrano v. United Airlines, Inc., two employees alleged that the masking and testing protocols of the company during the COVID-19 pandemic "altered the conditions and terms of [their] employment." No. 21-

1074, 2023 WL 8721437 at *4 (N.D. Tex. Dec. 18, 2023). The court found that these protocols were *de minimis* under the new standard, noting that "[i]f the *de minimis* standard excludes any workplace harm, surely it prevents judges from supervising a company's decisions regarding" the protocols, as the COVID-19 pandemic was a once in a century event which was "unprecedented in the modern era." Id.

Green argues that the circumstantial evidence of disparate treatment in this case includes the differential work-from-home permissions during a pandemic based on racial makeup. See Record Document 47 at 42. She states that although her department of only African American employees eventually received the option to work from home, the unique circumstances presented by the global pandemic demonstrate a dispute of fact, at the very least, regarding whether the ability to work remotely constitutes an adverse employment action. See id. at 40-41. Green asserts that when she asked Dasilva about working from home, he told her "well, it would be based on your – if you are a parent or your health reasons to be going home[ ]." Record Document 43-2 at 67. She also cites to Murray's testimony in which she stated that the department she supervised let employees work from home on a "first-come, first-serve" basis. Record Document 47-5 at 14. Thacker testified that "obviously, when the pandemic first started, we did not have the capabilities to snap our fingers and send everybody home immediately. We had to ensure that we had the proper protocols and available technology in order to make that happen." Record Document 36-6 at 6.

The Court agrees with the Sambrano court's reasoning in that if the *de minimis* standard excludes any workplace harm, surely it prevents judges from supervising a company's decisions regarding the protocols they implemented during the beginning of

the pandemic, like the protocols they used in sending workers home to do remote work for the first time, as the COVID-19 pandemic was a "once in a century event." See 2023 WL 8721437 at *4. Like the court in Sambrano, this Court notes that it will not expand the Hamilton standard into the sphere of these workplace trifles, absent clear direction from the Fifth Circuit. If such claims are allowed to survive at this stage, district courts would become "super-personnel departments." Id. (citing Eyob v. Mitsubishi Caterpillar Forklift Am., Inc., 745 F. App'x 209, 214 (5th Cir. 2018) (citing Riser v. Target Corp., 458 F.3d 817, 821 (8th Cir. 2006)). Employers across the country had to implement new policies, and "trial courts should not be in the business of scrutinizing these details of personnel management in such extraordinary circumstances." Id. The Court finds that Green has not established an essential element of her *prima facie* case because she was not subject to more than a *de minimis* adverse employment action.

Ochsner further argues that Green failed to identify any similarly situated non-African American coworkers who were treated more favorably than she was. See Record Document 38 at 25. Green counters that "Green's lack of knowledge about whether non-Black coworkers received similar treatment does not diminish [her] claim," and that the focus is on the treatment of her and her department, which was less favorable than that of other departments. See Record Document 47 at 42. Green cites to Murray's deposition statement that the other department which she managed went home on a "first-come, first-serve basis," but does not identify any employees from that department. Id. at 43.

To satisfy the "similarly situated" prong, the employee carries out a comparator analysis. Lee v. Kan. City S. Ry. Co., 574 F.3d 253 (5th Cir. 2009). Under this analysis, the employee must establish that she was treated less favorably than a similarly situated

18

employee outside of her protected class in nearly identical circumstances. See id. at 259–60 (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817). "A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications." Herster v. Bd. of Supervisors of La. State Univ., 887 F.3d 177, 185 (5th Cir. 2018). Moreover, the Fifth Circuit requires an employee to show that the comparator's conduct is "nearly identical," not strictly identical. Lee, 574 F.3d at 260 n.25.

Although Green argues that she was treated differently than "other departments" at Ochsner, specifically the Nursing Departments, Green provides no evidence regarding the details of those employees' situation: no indication to whom the Nursing Department or other departments reported, no evidence regarding their job responsibilities, experience, or qualifications, nor any evidence regarding the racial makeup of those departments. An appropriate comparator requires Green to establish that a similarly situated employee in nearly identical circumstances was treated differently, but Green has failed to satisfy that burden. See Douglas v. St. John Baptist Parish Lib. Bd. of Control, No. 21-599, 2022 WL 898746 at *19 (E.D. La. Mar. 28, 2022).

Because the Court holds that Green has not met her burden to set forth a *prima facie* case of racial discrimination, it need not discuss the parties' remaining arguments regarding pretext. See Morris v. Town of Independence, 827 F.3d 396, 403 (5th Cir. 2016); see also Thomas, 2023 WL 5972048 at *5 n.21. As such, Green's racial discrimination claim does not survive summary judgment and is therefore dismissed.

D.  **Age Discrimination Claim**

The McDonnell Douglas framework also applies to ADEA discrimination claims. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 n.3 (5th Cir. 2000) (applying the McDonnell Douglas rubric to ADEA claims). "To make out a *prima facie* case of discriminatory treatment based on age, the plaintiffs are required to prove: (1) they are within the protected class; (2) they are qualified for the position; (3) they suffered an adverse employment decision; and (4) they were replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)." Smith v. City of Jackson, 351 F.3d 183, 196 (5th Cir. 2003). As the Supreme Court has stated, to prevail under the ADEA, the plaintiff must ultimately "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).

Ochsner challenges the third and fourth elements of Green's age discrimination claim, stating that she cannot establish that she experienced an adverse employment action nor that she was treated less favorably than any similarly situated employees outside her protected class. See Record Document 38 at 28. Green argues that she suffered multiple adverse employment actions, including a significant reduction in her job responsibilities after the alleged comments made by Dasilva. See Record Document 47 at 45.

As explained above, the "terms, conditions, or privileges of employment" must be materially affected to qualify as an adverse employment action. See Dixon, 2024 WL 150509 at *4. The Court finds that Green has not suffered an adverse employment action

20

under the *de minimis* standard discussed in the above section, as the "terms, conditions, and privileges" of her employment did not materially change. Green cites to her job responsibilities being "reduced," however, she testified that her compensation did not change, her work hours did not change, and that she was restored to handling four clinics after an undetermined period. <u>See</u> Record Document 36-3 at 70-72. This Court notes again that it will not expand the <u>Hamilton</u> standard into the sphere of these workplace trifles, absent clear direction from the Fifth Circuit, to avoid courts becoming "super-personnel departments." <u>Sambrano</u>, 2023 WL 8721437 at *4; <u>see also</u> <u>Jackson v. Watkins</u>, 619 F.3d 463, 468 n.5 (5th Cir. 2010) ("It is not our place to second-guess the business decisions of an employer, so long as those decisions are not the result of discrimination"); <u>Riser v. Target Corp.</u>, 458 F.3d 817, 821 (8th Cir. 2006) (internal citation omitted) ("While [employee] may have some concerns about [employer's] management style, he does not have a Title VII claim....  '[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.'").

Additionally, Green asserts that when her clinics were reassigned, they went to a "younger" employee. Record Document 36-3 at 66. However, Green does not provide any information about this person's age, and she does not know this "younger" person's race. <u>Id.</u> at 66, 69. She testified that she only knew this employee was younger than her because "another co-worker [ ] had told [her] that." <u>See id.</u> at 70. To establish the last element of her *prima facie* case for age discrimination, Green must show either that she was "replaced by someone significantly younger" or "treated less favorably than others

who were similarly situated but outside the protected class." <u>Ross v. Judson Indep. Sch. Dist.</u>, 993 F.3d 315, 323 (5th Cir. 2021). Green does not provide any details, even in her declaration following her deposition, about the purportedly younger employee named "Jimarsa," and thus has not identified a comparator.

An email from Allen regarding the reassignment of clinics was sent out that stated "we have added to [sic] advisors from the contact center to assist with the referrals." Record Document 47-13 at 2. There is no evidence in the record that supports a finding that the reassignment of Green's clinics was caused by her age. Thus, Ochsner is entitled to summary judgment as to Green's age-based discrimination claim.

E. **Constructive Discharge**

The Fifth Circuit has recognized that an employee who resigns or retires "may satisfy the discharge requirement by proving constructive discharge." <u>Brown v. Bunge Corp.</u>, 207 F.3d 776, 782 (5th Cir. 2000). Constructive discharge occurs when an "employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." <u>Peterson v. City of Dallas</u>, 135 F. App'x 635, 638 (5th Cir. 2005) (quoting <u>Jurgens v. E.E.O.C.</u>, 903 F.2d 386, 390 (5th Cir. 1990)). In making this determination, courts consider whether the plaintiff suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

<u>Brown</u>, 207 F.3d at 782 (alterations in original) (quoting <u>Barrow v. New Orleans Steamship, Ass'n</u>, 10 F.3d 292, 297 (5th Cir. 1994)). This test is objective, meaning that

the employee's "resignation must have been reasonable under all the circumstances." Tyler v. Union Oil Co. of Cal., 304 F.3d 379, 394 (5th Cir. 2002) (quoting Barrow, 10 F.3d at 297). Harassment sufficient to constitute a constructive discharge must be greater than that required to support a hostile work environment claim. Brown, 237 F.3d at 566 (citation omitted).

Ochsner asserts that the only potential factor that Green can argue regarding a constructive discharge is the sixth as she was never demoted, never had a reduction in salary, was never assigned to menial or degrading work, and was never offered early retirement or employment on lesser terms. See Record Document 38 at 30. Green argues that her experience at Ochsner meets the threshold for constructive discharge, and that the fact that her responsibilities were returned to her does not undo the harm that it caused and does not erase the harassment and discrimination that occurred. See Record Document 47 at 48-49.

Green asserts that she was constructively discharged from her employment, as the working conditions imposed upon her by Ochsner became so intolerable that any reasonable person in her position would have felt compelled to resign. See id. at 47. Because Green failed to establish sufficient evidence for her hostile work environment claim, *a fortiori*, she has not presented sufficient evidence in the record to make her *prima facie* case for her constructive discharge claim. See Culbert v. Cleco Corp., 926 F.Supp.2d 886, 898 (W.D. La. 2013); see also E.E.O.C. v. U.S. Drug Mart, Inc., 2024 WL 64766 at *2 (5th Cir. Jan. 5, 2024) (finding that the plaintiff's hostile work environment failed as a matter of law and that because the Fifth Circuit has emphasized that "[c]onstructive discharge requires a greater degree of harassment than that required by

a hostile work environment claim," the plaintiff's constructive discharge claim failed as well).

F. **Retaliation**

"To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in a [ ] protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009) (citing Aryain v. Wal–Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008)). "Courts analyze retaliation claims under Title VII, 42 U.S.C. § 1981, the ADEA, and the ADA using the same framework." White v. Chevron Phillips Chem. Co., LP, No. 19-187, 2020 WL 13616522 at *6 (S.D. Tex. July 30, 2020).

A "protected activity" under Title VII is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." Williams v. Recovery Sch. Dist., 859 F. Supp. 2d 824, 830–31 (E.D. La. 2012) (citing Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003)). Title VII thus covers two distinct types of protected activity: (1) opposition to any practice rendered unlawful by Title VII (the "opposition clause"), and (2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII (the "participation clause"). Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 555 U.S. 271, 274, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009). Evidence that the plaintiff opposed the defendant's conduct, standing alone, does not satisfy the opposition clause. Rather, the clause "requires opposition of a practice made unlawful by Title VII." E.E.O.C. v. Rite Way Serv., Inc., 819

F.3d 235, 240 (5th Cir. 2016). Complaints about a "hostile work environment" or "unfair treatment" must give the employer some notice of how the conduct is discriminatory. Tratree v. BP N. Am. Pipelines, Inc., 277 Fed.Appx. 390, 395 (5th Cir. 2008). However, the Fifth Circuit has made clear that the standard is not whether the plaintiff can successfully state and support a Title VII claim but whether the plaintiff "reasonably believes the employment practice to be unlawful." Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1136 (5th Cir. 1981). This "reasonable belief" standard acknowledges that there is "some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII." E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 241 (5th Cir. 2016).

The Fifth Circuit has consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity. See, e.g., Tratree, 277 Fed.Appx. at 395 (stating that, in the ADEA context, where the Fifth Circuit "uses the same standards of proof ... as it does for Title VII[,] ... [c]omplaining about unfair treatment without specifying why the treatment is unfair ... is not a protected activity"); Harris–Childs v. Medco Health Solutions, Inc., 169 Fed.Appx. 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment"); Moore v. United Parcel Serv., Inc., 150 Fed.Appx. 315, 319 (5th Cir. 2005) ("Moore ... was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII."); see also Evans v. Tex. Dep't of Transp., 547 F.Supp.2d 626, 654 (E.D. Tex. 2007) ("Plaintiff has not shown that she engaged in a statutorily protected activity. Specifically,

although Evans complained of a purportedly hostile work environment, at no time did she suggest that [the conduct at issue] was related to Evan's race, sex, ... or other characteristic protected by Title VII."); see also Smart v. Geren, 350 Fed. Appx. 845, 846 (5th Cir. 2008) ("Although Smart filed two unfair labor practices charges before being terminated, nothing in either form indicates that the complaints concerned the infraction of a right with redress under Title VII. He thus raised no fact issue that he engaged in 'protected activity' while employed for purposes of Title VII.").

Ochsner does not dispute that Green's filing of a Charge of Discrimination with the EEOC on October 26, 2020, constituted activity protected by Title VII and/or the ADEA. See Record Document 38 at 34. However, Ochsner asserts that Green's allegations of retaliation, at least with respect to Allen and Dasilva, predate the filing of the charge. See id.

As to her race-based retaliation claims, as noted above, Green cites to her alleged conversation with Thacker and her team being sent home later than other departments in her building. See Record Document 36-3 at 23, 25. In her complaint to the Ochsner Ethics Compliance Hotline, she complained of her conversation with Thacker, stating that he used an "unpleasant tone of voice" and that he was "unprofessional and disrespectful due to the way he talks to employees." Record Document 44-2 at 1. As to not being sent to work from home for a short period at the beginning of the pandemic, Green complained that there was a "lack of communication" from Dasilva as she never received an email to inform her about the conditions to be working from home. Id. However, this complaint does not mention that she believed these incidents were based on her race. See id.

26

As to Green's age-based retaliation claims, the Court agrees with Ochsner that Green did not put Ochsner on notice that she was complaining of age discrimination when she complained that Dasilva allegedly yelled at her at criticized her job performance. Green complained that this was "unprofessional," but never referred to the treatment as age based. Record Document 47-8 at 1; Tratree, 227 Fed.Appx. at 396. Because she failed to do so, her claims are lacking on the essential element of causation between her complaints and the adverse employment actions she claimed to have suffered. See id.

Green states that although her subsequent complaints after the ones regarding the conversation with Thacker, the ability to work from home, and Dasilva's comments do "not [cite] age or race," they were lodged in an atmosphere where Green had already expressed concerns about discriminatory treatment. Record Document 47 at 51. Green also asserts, without citation, that it is the duty of the employer to investigate and ascertain whether the conduct complained of is related to discrimination. See id. at 52. For instance, she claimed that she spoke with Gilpin regarding the alleged "harassing" phone calls from Dasilva but did not say she complained that this behavior was due to her race or age. See Record Document 36-3 at 59-60.

Assuming *arguendo* that Green reasonably believed that her communications pre-October 26, 2020, discussed an unlawful employment practice, her complaints do not implicate her protected status or give any notice that Ochsner's conduct was discriminatory based on her race or age. See Tratree, 277 F. App'x at 395; Harris-Childs, 169 F. App'x at 916. This failure forecloses the possibility that Green's complaints constitute protected activity. Green's complaints regarding a "hostile work environment"

or "unfair treatment" must give the employer some notice of how the conduct is discriminatory to prove the essential causation element. <u>Tratree</u>, 277 F. App'x at 395.

Ochsner is therefore entitled to summary judgment as a matter of law as to Green's retaliation claims.

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Record Document 36) is **GRANTED**.

A judgment consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 11th day of March, 2024.

S. Maurice Hicks, Jr.
United States District Judge